IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA REYES,<br><br>             Plaintiff,<br><br>    v.<br><br>OTIS ELEVATOR COMPANY, DAYMARK REALTY ADVISORS, INC., and NNN 1818 MARKET STREET, LLC,<br><br>             Defendants. | CIVIL ACTION<br>NO. 13-4379 |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                                 November 1, 2016

      Plaintiff worked at a law firm in a high-rise building at 1818 Market Street in Philadelphia. NNN 1818 Market Street, LLC, owned the building, and Daymark Realty Advisors, Inc., was the property manager ("Building Defendants"). Beginning in 2008, and in effect at the time Plaintiff's claim arose, Building Defendants had a contract with Otis Elevator Company for inspection and maintenance of the multiple elevators in the building. Otis kept a regular technician in the building on a daily basis.

      On March 13, 2012, Plaintiff alleges she got into an elevator on the 35th floor and pressed the button to go to the lobby. According to Plaintiff, the elevator dropped fast and stopped hard before even reaching the 34th floor; the sudden stop threw her to the ground, causing serious back and knee injuries that led to surgery and ongoing problems. There appear to have been no direct witnesses to this incident, and Plaintiff reported it to her human resources director and the building security director several days later. An

incident report apparently prepared by an unknown person lists a "drive fault" as occurring on the day in question.

      Plaintiff filed a complaint in the Court of Common Pleas of Philadelphia on April 19, 2013. Defendants removed the case on the basis of diversity, and Plaintiff sought to join additional individual defendants that would have precluded diversity jurisdiction. By order dated October 18, 2013, the Court denied joinder of the additional defendants and accordingly denied remand. Subsequently, the Court questioned the allegations of citizenship regarding Defendant NNN, but ultimately concluded that removal and jurisdiction in this Court were proper on May 22, 2014. After multiple extensions of the discovery schedule, Otis and Building Defendants filed two separate motions for summary judgment, and the latter have also moved to preclude Plaintiff's expert witness. As explained below, the Court denies all three motions.

Defendants' Duties to Plaintiff

      Fundamental to any negligence claim is the nature of the duty a defendant has toward a plaintiff. *See Pike Cty. Hotels Corp. v. Kiefer*, 396 A.2d 677, 681 (Pa. Super. Ct. 1978). There seems to be little disagreement that Otis's duty in this case, even to a third party such as Plaintiff, "is measured by the nature and scope of [its] contractual undertaking." *Evans v. Otis Elevator Co.*, 168 A.2d 573, 576 (Pa. 1961); *see also Farabaugh v. Pennsylvania Tpk. Comm'n*, 911 A.2d 1264, 1283 (Pa. 2006). Plaintiff and Otis likewise agree that the scope of the contractual obligation in this case is reasonable inspection and maintenance of the elevator involved.

The nature and source of the Building Defendants' duty is much more contentious. The Building Defendants strenuously argue that they essentially had no duty to Plaintiff at all, because they are not liable for the negligence of the independent contractor they hired. The principle is correct, *see Hader v. Coplay Cement Mfg. Co.*, 189 A.2d 271, 277 (Pa. 1963) ("Ordinarily one who engages an independent contractor is not responsible for the acts of such independent contractor or his employees."), but it is inapplicable to this case because it assumes the source of the Building Defendants' duty lies in their relationship with contractor Otis and Otis's negligence in performing its contracted activity.[1] In actuality, as Plaintiff points out, the Building Defendants' duty comes from the rules of premises liability. As to invitees, which Plaintiff surely was here, a possessor of land is liable for harm caused by a condition of the land if "[1] he knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, [2] he should expect that the invitees will not realize it or will fail to protect themselves against it, and [3] the party fails to exercise reasonable care to protect the invitees against the danger." *Blackman v. Fed. Realty Inv. Trust*, 664 A.2d 139, 142 (Pa. Super. Ct. 1995).[2]

The Building Defendants' contention that they had no duty to Plaintiff is belied by their argument elsewhere that they fully discharged their duty—in their words, that

---

[1] Viewed in an alternative way, the general rule is applicable but an exception applies. As noted in Restatement (Second) of Torts § 409, nearly eighty years ago the rule was already "primarily important as a preamble to the catalog of its exceptions." *Pac. Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 277 N.W. 226, 228 (Minn. 1937). One major category of exceptions is "[n]on-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff." Restatement (Second) of Torts § 409 cmt. b. As discussed below, the responsibility of a possessor of land is one such non-delegable duty.

[2] To the extent there is an interplay between the concept of premises liability and the principle that a party is not liable for a contractor's negligence, it comes into play when possession and control of the premises actually passes to the contractor. *See Hader*, 189 A.2d at 277. Here, the briefing has not addressed that issue, and the other rules and examples discussed below regarding the non-delegable nature of premises liability confirm that an elevator maintenance arrangement is not likely to shift possession and control in the way necessary to shift liability to the contractor.

3

they fully complied with the standard of care—by hiring a contractor. This argument is not only inconsistent but also mistaken. To construe Building Defendants' position charitably, they can be understood as arguing that they "exercise[d] reasonable care to protect the invitees against the danger" by hiring Otis. *Id.* But the law is clear that the duty of a premises owner cannot be discharged in this way.

> One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business . . . is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land . . . in reasonably safe condition, as though he had retained its maintenance in his own hands.

Restatement (Second) of Torts § 425 (1965); *see also Gilbert v. Korvette's, Inc.*, 299 A.2d 356, 364 (Pa. Super. Ct. 1972), *aff'd sub nom.*, *Gilbert v. Korvette, Inc.*, 327 A.2d 94 (Pa. 1974). The first example appended to § 425 is particularly telling with respect to this case:

> A operates a department store. He employs the B Elevator Company to repair his elevators. Owing to the negligence of the B Company, the elevator is dangerously defective. It falls and harms C, who has come to buy, and D, who has come to the shop to look over the goods displayed. A is subject to liability to C and D.

Restatement (Second) of Torts § 425 illus. 1. Addressing an argument that assumed a "landowner's duty of care could be entirely delegated," the Pennsylvania Commonwealth Court explained that, on the contrary, "the Restatement of Torts §§ 419–421 (1979), teaches that this duty is non-delegable because it is the owner's obligation to maintain premises in a safe condition for those lawfully on the land." *City of Wilkes-Barre v. Kaminski Bros.*, 804 A.2d 89, 94 n.8 (Pa. Commw. Ct. 2002). The Third Restatement, though not yet itself adopted, also clarifies that "[t]he underlying theme of §§ 419- 422 [of the Second Restatement was] that a possessor or lessor of land, when under a duty of

4

care with regard to the land, is not relieved of that duty solely because the possessor or lessor has hired an independent contractor." Restatement (Third) of Torts: Phys. & Emot. Harm § 62 cmt. d (2012). The Building Defendants cannot escape liability by pointing to their contract with Otis,[3] and the claim against them must be assessed according to the normal standards of negligence and premises liability.

Requirements of Plaintiff's Claim

So Plaintiff must be able to show that her injuries were caused by: with respect to the Building Defendants, their failure to protect against a risky condition they knew or reasonably should have known about (that Plaintiff would not have been expected to protect herself against); and with respect to Otis, negligence in undertaking its contractual obligation to conduct reasonable inspection and maintenance of the elevator. There is little distinction between the two because actual or constructive knowledge of a risky condition without action to correct it is really just another way of describing failure to conduct reasonable inspection and maintenance. The point of contention between the parties is basically an argument about notice: all of the defendants argue Plaintiff cannot show there was any indication of a dangerous condition, and because they did reasonable inspections and maintenance, she also cannot show they missed any indications they should have caught. Plaintiff seems to disagree but also offers two other avenues for making out her case that do not strictly rely on notice.

First, instead of notice, a plaintiff can show that a defendant possessor of land *created* the danger: "An invitee must prove *either* the proprietor of the land *had a hand in*

---

[3] The possibility of indemnity as a feature of their contractual relationship is another matter entirely and is the ordinary way of transferring risk as the Building Defendants want to do; they cannot transfer the duty itself.

5

*creating the harmful condition*, or he had actual or constructive notice of such condition." *Estate of Swift v. Ne. Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (emphasis added) (citing *Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 598 (Pa. Super. Ct. 1980)); *see also Murray v. Dollar Tree Stores, Inc.*, No. CIV.A. 09-1270, 2009 WL 2902323, at *2 (E.D. Pa. Sept. 10, 2009); *Kania v. Sbarro, Inc.*, No. CIV. A. 97-6863, 1998 WL 800320, at *2 (E.D. Pa. Nov. 13, 1998) ("A possessor of the land is also liable, of course, for a harmful condition which he or his employees created."). This principle is attached to the premises liability rules, so it may not directly apply to Otis, but actually having a part in causing a dangerous condition is also a breach of the contractually defined duty to conduct reasonable inspection and maintenance.

Second, plaintiffs in some premises liability cases may be able to prove negligence via *res ipsa loquitur*. That doctrine provides:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
> > (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> > (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> > (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328D (1965); *see also Gilbert*, 327 A.2d 94, 100 (Pa. 1974) (adopting § 328D in an escalator-injury case against both a premises defendant and Otis Elevator Co., which had contracted to maintain the escalator).[4] "This principle has

---

[4] As applied in premises liability cases, *res ipsa loquitur* may require evidence that the injury was caused by a defect in the property or building of inherent duration rather than a transitory condition such as a spill. *See Cox v. Wal-Mart Stores E., L.P.*, 350 F. App'x 741, 744 (3d Cir. 2009); *Neve v. Insalaco's*, 771 A.2d 786, 789–90 (Pa. Super. Ct. 2001). Without addressing the issue in quite those terms, Otis has indeed argued that *res ipsa loquitur* should be unavailable because any defect may have arisen just before the incident. *See Willis v. Besam Automated Entrance Sys., Inc.*, No. CIV.A.04-CV-0913, 2005 WL 2902494, at *13 (E.D. Pa. Nov. 3, 2005) (citing *Hafferman v. Westinghouse Elec. Corp.*, 653 F.Supp. 423, 433 (D.D.C.1986)), *aff'd in part*, 228 F. App'x 246 (3d Cir. 2007). Given the Pennsylvania holdings in *Gilbert*

been applied to cases in which machinery has malfunctioned but where there is no evidence to identify the specific reason for such malfunction." *Williams v. Otis Elevator Co.*, 598 A.2d 302, 305 (Pa. Super. Ct. 1991). And an inference of negligence based on *res ipsa loquitur* "may be drawn jointly against the owner of an elevator and the elevator company which maintains the same." *Id.* Section 328D(1)(b) does require elimination of other potential causes, such as Plaintiff's own negligence, but (without citation) Otis exaggerates the showing necessary. This prong of the standard carries an ordinary burden of proof by a preponderance of the evidence, and "it is enough that [a plaintiff] makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant." Restatement (Second) of Torts § 328D cmt. f.

Building Defendants' Motion to Preclude Plaintiff's Expert

The evidence available to make the necessary showings depends upon whether Plaintiff's expert opinion, which Building Defendants have moved to preclude, is admitted.[5] A substantial portion of Building Defendants' argument regarding the expert is based on the mistaken notion that they have avoided or discharged their duty by hiring Otis, and that argument need not be addressed for the reasons discussed above. They also, however, challenge the expert by arguing that his opinion is impermissibly speculative because he cannot identify the specific, singular cause of the alleged elevator incident.[6]

---

and *Williams*, applying *res ipsa loquitur* in escalator and elevator cases, it would be inappropriate to find the doctrine flatly unavailable in this case. It remains a case-by-case determination under § 328D's standard for whether there is circumstantial evidence permitting an inference of negligence.

[5] Otis has also reserved the right to challenge the admissibility of the expert and has so far argued that his opinion simply does not benefit Plaintiff's case.

[6] It is worth noting that there may be some aspects of the expert's opinion that contribute to Plaintiff's case but are not necessarily about causation (such as what actions and practices are to be expected of a competent elevator technician). Those aspects might be separately admissible, but the parties do not argue

"When a party must prove causation through expert testimony the expert must testify with reasonable certainty that in his professional opinion, the result in question did come from the cause alleged." *Cohen v. Albert Einstein Med. Ctr., N. Div.*, 592 A.2d 720, 723 (Pa. Super. Ct. 1991) (internal quotation marks omitted) (quoting *Kravinsky v. Glover*, 396 A.2d 1349 (Pa. Super. Ct. 1979)). The necessary certainty as to cause may not be present when an expert points to multiple possible causes and cannot specify one of them, because "the jury must resort to speculation or conjecture in determining [a] causal relationship." *O'Donoghue v. Riggs*, 440 P.2d 823, 830 (Wash. 1968). And an expert's testimony may be inadmissible even if his uncertainty about the cause is partly due to a lack of available records that might have provided information to help pin down the cause. *See Stimmler v. Chestnut Hill Hosp.*, 72 Pa. D. & C.4th 74, 81 (Com. Pl. 2005).

But when *res ipsa loquitur* is in play, it may be sufficient for an expert to testify that an injury resulted from one of several possible causes, if all of the potential causes would constitute negligence by the defendant. *See Asbury v. Mercy Fitzgerald Hosp.*, 13 Pa. D. & C.5th 225, 252-57 (Pa. Com. Pl. Apr. 14, 2010), *aff'd sub nom.*, *Asbury v. Planned Parenthood*, 23 A.3d 1078 (Pa. Super. Ct. 2011). In *Asbury*, the plaintiff suffered nerve damage and her expert witness could not testify absolutely whether the harm resulted from direct nerve contact with a needle or scalpel, or indirect damage from the manipulation of surrounding muscle tissue; the expert did testify, however, that both of these causes would be negligence on the doctor's part and that no other cause (such as the defendant's suggestion that the nerve problem was psychosomatic) was possible. *Id.* The expert's admissibility was not in question, and the court found a *res ipsa loquitur*

---

the issue, and in any event, as explained below, the Court finds the expert opinion admissible even on the topic of causation.

instruction was proper. *Id.* This contrasts with the situation in a case like *O'Donoghue*, where the three possible causes of a urinary problem were 1) doctor-imposed immobility during treatment for a leg injury, 2) a neurological disease, and 3) a psychiatric problem. 440 P.2d at 829. Only the first would have been the doctor's fault, so uncertainty between the three would force the jury to speculate as to the defendant's responsibility. Where an expert can state that an injury would not normally occur absent negligence, identify several possible causes that are all within the defendant's responsibility, and rule out all other causes, his testimony can support a claim of negligence under the *res ipsa loquitur* standard.

       Plaintiff's expert in this case is elevator consultant Richard A. Kennedy. With respect to whether his lack of certainty about the cause of the incident should preclude his testimony, there are several relevant items in his report and deposition. He lists three possible causes: 1) incomplete or faulty maintenance the day before the incident, 2) maintenance the day of the incident being done without properly locking the elevator out of service while the maintenance was performed, and 3) an incomplete maintenance task such as a loose PC board not discovered prior to the incident (the distinction between 1 and 3 is not absolutely clear). He identifies as a further possible cause a problem with certain rollers: records indicate repeated service calls in January 2012 for replacement of rollers, and problems with a certain kind of roller could lead to the incident alleged. He notes that if someone pushes a button to call an elevator from another floor, the elevator will stop and level gently, and it would not cause an emergency stop. He also notes that Plaintiff herself asserts that she did not hit the emergency button. Finally, he specifically states: "Elevators don't normally perform emergency stops," and "Emergency stops don't

normally happen." (Dep. Tr. at 50, 66-67). This case is more similar to *Asbury* than *O'Donoghue*. Mr. Kennedy has listed three or four possible causes, all of which he attributes to the defendants' negligence; he has denied several other possible causes; and he has stated that the incident Plaintiff describes would not normally happen. His testimony will not, therefore, be precluded as too uncertain or speculative.

Application of the Above Standards to the Evidence in this Case

With Building Defendants' objection to the expert overcome, all of the evidence available to Plaintiff can now be measured against the standards by which she can make her case. To reiterate, then, Plaintiff can sustain her claim of negligence by showing: 1) a dangerous condition plus either notice or a hand in causing the danger, or 2) that the harm would not have ordinarily occurred without negligence and causes other than the defendants' negligence are excluded by a preponderance of the evidence.

Plaintiff has an expert to opine that there was a dangerous condition—either bad rollers, an elevator in service that should have been locked out, or some loose component or other defect in the elevator system. She also has evidence that maintenance was done the day before and the day of the incident, suggesting very little time for a problem to arise that the defendants would not have had a chance to discover. Though thin, that evidence could reasonably support the existence of notice. Moreover, Plaintiff has evidence that the defendants did not keep proper maintenance records in compliance with industry standards, had an unrelated deficiency regarding hoist ropes noted by a state inspector for twenty-two months, and often recorded little or no time for some

maintenance tasks. This evidence could lead to the conclusion that the defendants had a part in creating the dangerous condition.

Plaintiff also has evidence (her own testimony) that an emergency stop occurred and that she did not hit the emergency button. She has an expert's opinion that emergency stops do not normally occur, that someone pushing a button on another floor will not cause an emergency stop, and that one of several identified causes, all within the scope of the defendants' responsibility, led to the emergency stop that injured her. If a jury credits this evidence, as the Court must assume for purposes of summary judgment, then Plaintiff can show an incident that would not normally occur and for which all possible causes constitute negligence by the defendants. At this stage, therefore, Plaintiff can also sustain her claim by way of the legal principle of *res ipsa loquitur*.

The Court is also sympathetic to Plaintiff's general argument that the defendants should not be able to benefit from their deficient record-keeping. While Plaintiff is still required to present evidence to make her case, the Court is inclined to deny summary judgment against her even if her evidence is only marginally sufficient because the defendants may bear some responsibility for making the necessary evidence so hard to find by not properly making and preserving records.

Conclusion

Plaintiff's has set forth support for each of the necessary elements of her claim, so she is entitled to proceed to trial and present her case to a jury. Both motions for summary judgment and the motion to preclude Plaintiff's expert are hereby denied.